IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GARY MONTGOMERY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:21-cv-00820 |
| THOMAS CONRAD, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

Plaintiff Gary Montgomery, a pretrial detainee in the custody of the Davidson County Sheriff's Office (DCSO) in Nashville, Tennessee, has filed a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and has paid the filing fee.

The case is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e.

### I. INITIAL REVIEW

**A. PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915A, the Court must conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and must dismiss the complaint or any portion thereof if it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. This initial review of whether the Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the Complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

Plaintiff alleges that, on or about October 30, 2020, when he checked his main commissary account in anticipation of "a deposit to be used to hire an attorney," he noticed that a transaction had posted only five minutes earlier "transferring money from Plaintiff's main account to the phone account which is rarely used." (Doc. No. 1 at 5.) Plaintiff immediately reported the "d[i]screpancy and potential theft" to the officer on duty and demanded to speak with a sergeant or lieutenant. (*Id.* at 6.) Sergeant Leonard Johnson responded but refused to investigate or assist Plaintiff in changing his PIN. Instead, Johnson took Plaintiff to speak with Lieutenant Thomas Conrad. (*Id.*)

Plaintiff told Conrad what had occurred and demanded an investigation, including a review of video camera footage "to determine exactly who made the transaction." (*Id.*) Conrad refused to investigate, so Plaintiff requested "to file a police report so a proper investigation could be had by outside law enforcement." (*Id.*) This request was denied, despite DCSO policy "that such a request must be referred to the desk sergeant," who is to interview the inmate and then "send [the] request for police report and investigation to [the] appropriate law enforcement office." (*Id.*) In retaliation, Conrad told Plaintiff that he was "just going to turn your shit off." (*Id.*) Conrad then disabled Plaintiff's tablet, which prevented Plaintiff from accessing his account. (*Id.*)

On or about November 23, 2020, Plaintiff's cellmate was caught stealing Plaintiff's property and commissary purchases. (*Id.* at 6–7.) Plaintiff created a list of what was stolen and gave it to Officer Baxter, requesting to file a police report. (*Id.* at 7.) When, contrary to DCSO policy, Baxter did not contact the desk sergeant or other supervising officer, Plaintiff "complained louder to get a police report filed." (*Id.*) Sergeant Johnson responded to this scene, denied

3

Plaintiff's request to file a police report, and punished Plaintiff by sending him to a holding cell, leaving Plaintiff's cellmate alone with Plaintiff's property. (*Id.*)

On or about December 10, 2020, Plaintiff's cellmate "strongarmed him" and took commissary items and a high-quality Bible worth more than $100, threatening Plaintiff with bodily harm if he reported the theft. (*Id.*) Plaintiff "slipped a note" to the duty officer, Officer Hernandez, requesting help to recover his stolen property. (*Id.*) Sergeant Richard Grant responded to Plaintiff's note by placing him in a holding cell. (*Id.*) Plaintiff asked to file a police report against his cellmate for theft and assault, but Grant informed him that "we won't be doing that." (*Id.*) Plaintiff was then taken to "the hole" as punishment. (*Id.*) Plaintiff subsequently consulted with his case manager regarding his ability to file a police report under DCSO policy, but after talking with her supervisor, Defendant Granvisse Earl, the case manager reported that she "was told as long as you are here you are not allowed to contact police, even as a pretrial detainee." (*Id.* at 8.)

Plaintiff claims that the DCSO, as a subdivision of Davidson County, contracts with corporate Defendants Securus Technologies and Vend Engine for the management and security of inmate financial data and accounts; that he is a third-party beneficiary of those contracts; and that those Defendants "all are in breach of contract and have breached their duty of care and violated Plaintiff's privacy rights." (*Id.* at 8.) He claims that all the individual Defendants knew or should have known that he had a right to seek "assistance from law enforcement by the [filing] of a legal criminal complaint or police report." (*Id.*) He alleges that he lost more than $2,500 out of his commissary account, "losing the ability to use it for commissary purposes or for use in hiring legal defense help such as an attorney or investigator or to pay them," and causing him to experience emotional distress. (*Id.* at 9.) As relief, Plaintiff seeks (1) to have his money refunded to his commissary account; (2) an order enjoining DCSO to implement privacy safeguards at the kiosk,

and to provide inmates with the "ability to transfer funds from phone account back to commissary (main) account"; and (3) an award of compensatory and punitive damages, including $20,000 for each instance of a Defendant barring him from filing a police report or other request for an investigation by law enforcement. (*Id.*)

**D. Analysis**

Plaintiff claims that the property losses he suffered and the responses of his jailors to those losses, including their failure to follow DCSO policy on reporting apparent crimes to law enforcement, resulted in violations of his Sixth Amendment right to access the courts, his Fourteenth Amendment rights to due process and equal protection, and his federal rights to privacy and to be free from retaliation, as well as causing harm redressable under state tort law. (Doc. No. 1 at 3.) These claims are discussed below.

    1. Federal Claims

        a. Municipal and Official-Capacity Claims

To begin with, no federal claims can proceed against the Metropolitan Government of Nashville and Davidson County or its employees, including Davidson County Sheriff Daron Hall, sued in their official capacity.[1] While these Defendants are properly parties to this civil rights action, "[t]o plead a claim for municipal liability under § 1983, Plaintiff must plausibly allege that his or her constitutional rights were violated and that a policy or custom of [the municipality] was the 'moving force' behind the deprivation of Plaintiff's rights." *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 941 (M.D. Tenn. 2012) (citing *Miller v. Sanilac County*, 606 F.3d 240, 254–55 (6th Cir. 2010)). The Complaint in this case does not allege that any policy or custom of the

---

[1] "Official capacity claims are equivalent to claims against a defendant's employer." *Perkins v. Washburn*, No. 3:19-cv-00959, 2020 WL 3972749, at *8 (M.D. Tenn. July 14, 2020) (citing *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (holding that "individuals sued in their official capacities stand in the shoes of the entity they represent")).

City of Nashville or Davidson County caused the violation of Plaintiff's constitutional rights; indeed, he complains that his alleged harm was caused by the failure to follow applicable DCSO policy regarding the reporting of crime to outside law enforcement. (*See* Doc. No. 1 at 6–8.) Generally, "[i]f employees aren't following the policy, then the policy itself isn't causing the injury." *Harvey v. Dart*, No. 19-CV-2996, 2021 WL 4264312, at *6 (N.D. Ill. Sept. 20, 2021). Accordingly, the Section 1983 claims against the Metropolitan Government of Nashville and Davidson County and its employees in their official capacity cannot be allowed to proceed.

### b. Individual-Capacity Claims

The Complaint asserts individual-capacity claims under federal law against Defendants Conrad, Johnson, Grant, Baxter, and Earl. (*See* Doc. No. 1 at 2–4.) Plaintiff claims violations of his rights under the Sixth and Fourteenth Amendments, his right to privacy, and his right to be free from retaliation (construed herein under the First Amendment).

Plaintiff's Sixth Amendment claim appears to be based on his allegation that he intended to use the funds he lost (or lost access to) "to hire an attorney" (*id.* at 5), and that such funds could also have been "use[d] in hiring legal defense help such as an . . . investigator." (*Id.* at 9.) Inmates have a fundamental constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to state a claim for denial of such access, an inmate must allege an "actual injury" to a "nonfrivolous," "arguable" legal claim that involves an attack on his incarceration or challenge to the conditions of his confinement. *Lewis*, 518 U.S. at 349, 353 & n.3, 355. *See also Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (highlighting "the need for care in requiring that the predicate claim be described well enough" in the complaint to demonstrate that it is nonfrivolous and arguable). The Complaint in this case describes impairment to Plaintiff's ability to hire counsel or an investigator

to develop claims or defenses he has already placed before the courts, rather than impediment to the initial presentation of any claim or defense. Nevertheless, liberally construing the Complaint in the light most favorable to Plaintiff, the Court finds for purposes of initial review that Plaintiff has sufficiently alleged that his loss of access to $2,500 resulted in "actual injury" to the presentation of his underlying legal positions. This claim will proceed for further development against Lt. Conrad, the official who allegedly denied Plaintiff assistance and disciplined him when he reported the disappearance of funds from his account.

Likewise, a liberal construction of the Complaint supports Plaintiff's assertion of a First Amendment retaliation claim against Lt. Conrad, based on Conrad's disabling of Plaintiff's tablet to "prevent Plaintiff from accessing his own account." (Doc. No. 1 at 6.) Plaintiff alleges that he demanded Conrad investigate what appeared to be the fraudulent withdrawal by a third party of trust account funds intended for payment of Plaintiff's defense or other litigation costs, but that Conrad refused, saying "Don't tell me how to do my job," and "We don't even know if they are the one who made the transfer." (*Id.*) When Plaintiff then appealed for an investigation by "outside law enforcement," Conrad "decided to retaliate against Plaintiff" by disabling his tablet so that he could not monitor his account activity. (*Id.*)

To state a claim for retaliation in violation of the First Amendment, Plaintiff must allege "that 1) he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 393 (6th Cir. 1999)). Construing Plaintiff's allegations in the light most favorable to him, it does not appear that his attempt to have the alleged theft of funds reported to outside law enforcement was simply an

7

attempt to bypass the DCSO's chain of command; rather, it "was a part of his attempt to access the courts" and thus protected conduct for purposes of his retaliation claim. *Id.* Here, as in *Siggers-El*, "Plaintiff had a right in attempting to access the courts to petition . . . [for] help in seeing the funds" he needed to pay his lawyer restored to, and ready for disbursement from, his inmate trust account. *Id.* at 700. At least for purposes of initial review, the Court finds that Plaintiff engaged in protected conduct and that Conrad's action in response to that protected conduct was sufficiently adverse to support a colorable claim of First Amendment retaliation. That claim will proceed for further development.

However, it does not appear that Sgt. Johnson's relocation of Plaintiff to a holding cell or Sgt. Grant's sending him to "the hole" were actions taken in retaliation for any exercise of protected conduct. Rather, Plaintiff appealed to these supervisory officials to file a police report (after Defendant Baxter refused) in response to his cellmate's alleged theft of Plaintiff's personal property. (*See* Doc. No. 1 at 6–7.) The allegation that Plaintiff "reported a crime to [jail officials] but that nothing happened, fail[s] to describe a violation of a constitutional right and therefore fail[s] to state a plausible claim under § 1983." *Butler v. Atchison Police Dep't*, No. 19-3167-SAC, 2019 WL 4640582, at *2 (D. Kan. Sept. 24, 2019). As the district court in *Butler* noted, "[t]here is no constitutional right to have law enforcement investigate complaints against other parties or to have a state actor report an alleged crime to a charging authority." *Id.* (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (no due process right to have someone else arrested for a crime); *Webb v. Caldwell*, 664 Fed. Appx. 695, 696 (10th Cir. 2016) (no constitutional right to have action taken against a person who threatened plaintiff); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (no constitutional interest in prosecution or non-prosecution of another); *Phillips v. Kerns*, 483 Fed. Appx. 400, 402 (10th Cir. 2012) (no constitutional right to transmittal of report

8

Case 3:21-cv-00820   Document 5   Filed 02/18/22   Page 8 of 13 PageID #: 31

to district attorney and other procedures); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (no constitutional right to have Sheriff file charges against guards who beat plaintiff)). "And failing to follow internal policies" of a municipal jail—such as the alleged DCSO policy regarding the reporting of crime to outside law enforcement—"without more, does not constitute" actionable conduct under Section 1983. *Burwell v. City of Lansing*, Michigan, 7 F.4th 456, 471 (6th Cir. 2021) (citing cases).

Moreover, Plaintiff cannot proceed in federal court on a claim that his Fourteenth Amendment due process rights were violated because of the loss of personal property—including funds in his inmate trust account—unless he pleads the inadequacy of state post-deprivation remedies for the loss, such as a state action for conversion. *Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995) (citing, *e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 531–36 (1984)); *Torrez v. Corr. Corp. of Am.*, No. CV 10-2093-PHX-MHM, 2010 WL 4922876, at *5–6 (D. Ariz. Nov. 29, 2010) (holding that "availability of a common-law tort suit against a private prison employee constitutes an adequate post-deprivation remedy" that "precludes a claim for violation of due process"). Tennessee recognizes "[a] cause of action for conversion [which] occurs when the alleged wrongdoer exercises dominion over the funds in defiance of the owner's rights." *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citation and internal quotation marks omitted). Plaintiff does not allege that this state remedy is inadequate. His due process claim is therefore subject to dismissal.

Plaintiff's equal protection claim is likewise subject to dismissal for failure to allege supporting facts. The Complaint contains a single reference to "equal protection" (Doc. No. 1 at 3) but does not allege the sort of class-based, purposeful discrimination required for such a claim to get off the ground. *See McGaughy v. Johnson*, 63 F. App'x 177, 178 (6th Cir. 2003) (citing,

9

e.g., *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000)). "An equal protection claim must be based on intentional discrimination against the plaintiff because of his membership in a particular class, not merely because he was treated unfairly as an individual." *Smith v. Town of Eaton, Ind.*, 910 F.2d 1469, 1472 (7th Cir. 1990)). But "prisoners are not members of a protected class for equal protection purposes," *McGaughy*, *supra*, and Plaintiff's failure to allege Defendants' discriminatory purpose requires the dismissal of this claim.

Finally, it does not appear that the seizure or temporary freezing of funds in an inmate's trust account otherwise gives rise to a constitutional claim. *See Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (finding that inmate had no due process claim because he had available post-deprivation remedies, even though claim was for intentional, unauthorized seizure of funds, and that he had no Fourth Amendment protection against seizure of funds); *Jackson v. SCI-Camp Hill*, No. 1:11-CV-1135, 2012 WL 3990888, at *5 (M.D. Pa. Sept. 11, 2012), *aff'd*, 530 F. App'x 150 (3d Cir. 2013) (finding prisoner-plaintiff "has no Fourth Amendment rights in his prison financial account"); *Drakeford v. Thompson*, No. 09–2239, 2010 WL 4884897, at *4 (D.S.C. Nov. 24, 2010) (no Fourth Amendment claim for money temporarily frozen in an inmate's trust account). Plaintiff's assertion of a federal right to privacy with regard to his inmate trust account (*see* Doc. No. 1 at 3, 8) is unavailing, as inmates have no reasonable expectation of privacy in their trust accounts, *see*, *e.g.*, *Witherow v. Cortez-Masto*, No. 308CV363LRHRAM, 2010 WL 1292968, at *4–5 (D. Nev. Jan. 14, 2010), *report and recommendation adopted*, No. 308CV00363LRHRAM, 2010 WL 1292466 (D. Nev. Mar. 30, 2010), and the Constitution does not "encompass a general right to nondisclosure of private information." *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)).

In sum, Plaintiff's Sixth Amendment claim of denial of access to the courts and his claim of First Amendment retaliation will be allowed to proceed against Defendant Conrad in his individual capacity. All other Section 1983 claims will be dismissed.

2. State Claims

Invoking this Court's supplemental jurisdiction (*see* Doc. No. 1 at 3 (citing 28 U.S.C. § 1367)), Plaintiff asserts claims of intentional infliction of emotional distress, fraud, and breach of contract. He alleges that the loss of funds from his commissary account caused him emotional distress. (*Id.* at 9.) In support of his fraud and contract claims, Plaintiff alleges that "DCSO is a sub-division of Metropolitan Government of Nashville and Davidson County who has contracts with Defendants Securus Technologies and Vend Engine with inmates, including Plaintiff, as third-party beneficiaries." (*Id.* at 8.) He alleges that the corporate Defendants have "a duty of care to protect inmates' privacy, data and financial accounts per their contract with DCSO," and that DCSO, Securus Technologies, and Vend Engine breached their contractual duties. (*Id.*)

In view of the above finding that Plaintiff's First and Sixth Amendment claims against Defendant Conrad survive initial review, the Court at this stage will allow the supplemental state-law claim of intentional infliction of emotional distress to proceed against Conrad as well.

As for the fraud and breach-of-contract claims, the Court finds that the Complaint does not contain allegations sufficient to support any plausible right to relief against the governmental or corporate Defendants. Under Tennessee law, contracts are "presumed to be executed for the benefit of the contracting parties and not for the benefit of third parties." *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 899 (Tenn. 2016) (citing, *e.g.*, *Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001)). "Nevertheless, a third party may seek to recover under a contract, but the third party bears the burden of proving, from the terms of the

11

contract or the circumstances surrounding its execution, that, at the time of contracting, he was an intended third-party beneficiary of the contract. If the contractual benefits flowing to the third party are merely incidental, rather than intended, the third party may not recover under the contract." *Id.* (citations omitted).

Accordingly, to state a plausible claim as a third-party beneficiary, a plaintiff must allege facts that (1) reflect the existence of a contract that recognized a right to performance in him when it was executed, and (2) demonstrate that such performance will either discharge a duty owed to the plaintiff or fulfill the promisee's intent to benefit the plaintiff. *J.S. Haren Co. v. City of Cleveland*, No. E2002-01327-COA-R3CV, 2003 WL 21276662, at *5 (Tenn. Ct. App. May 30, 2003) (quoting *Owner-Operator Indep. Drivers Ass'n*, 59 S.W.3d at 70). A complaint that does not make "*factual* allegations . . . [but] only conclusory statements bearing on [these] factors . . . is not enough." *Id.* (emphasis in original). Because the Complaint in this case does not include factual allegations to support Plaintiff's status as an intended third-party beneficiary to the contract he cites, but only conclusory assertions that "inmates, including Plaintiff, [are] third-party beneficiaries" and that the contracting parties have a "fiduciary obligation and duty of care to protect inmates' privacy, data and financial accounts" (Doc. No. 1 at 8), the fraud and breach-of-contract claims will be dismissed. *Cf. United States ex rel. Smith v. Peters*, No. 2:14-CV-01982-SU, 2018 WL 4441520, at *15 (D. Or. May 3, 2018), *report and recommendation adopted sub nom. United States v. Smith*, No. 2:14-CV-01982-SU, 2018 WL 4409378 (D. Or. Sept. 14, 2018) (allegation that prisoner-plaintiffs, "and all inmates, are 'third-party beneficiaries of' the contracts" for provision of mailing supplies to prison "is a legal conclusion not entitled to the presumption of truth"); *see also Claritt v. Correct Care Sols.*, No. CV 3:20-0544, 2022 WL 282911, at *4 (M.D. Pa. Jan. 31, 2022) (dismissing inmate's breach-of-contract claim because of insufficient factual

12

Case 3:21-cv-00820   Document 5   Filed 02/18/22   Page 12 of 13 PageID #: 35

allegations to show "that there was an express contractual intent to make him a third-party beneficiary of the relevant contract"); *Ferguson v. Corizon Health, Inc.*, No. 1:21-CV-00338-DCN, 2022 WL 60586, at *8 (D. Idaho Jan. 5, 2022) (same); *Farris v. Stepp*, No. 20-CV-02346-DDD-NYW, 2021 WL 5200210, at *5 (D. Colo. Nov. 9, 2021) (same); *Pagliaroli v. Ahsan*, No. CV 18-9683 (BRM), 2019 WL 979244, at *4 (D.N.J. Feb. 28, 2019) (same).

## II. CONCLUSION

As explained above, the Court finds that Plaintiff states nonfrivolous claims against Defendant Conrad. These claims will proceed for further development, while all other claims and Defendants will be dismissed.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE